UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-cv-80266-ALTMAN

**RONALD D. RAGAN**,

 *Plaintiff*,

v.

**KEVIN A. MARKS**,

 *Defendant.*
_____/

## ORDER

Our Plaintiff, Ronald D. Ragan, filed an amended civil-rights complaint.[1] *See* Amended Complaint [ECF No. 6]. Ragan avers that the Defendant, Officer Kevin A. Marks, violated his Fourth Amendment right "to be free from unreasonable searches and seizures." *Id.* at 3. Ragan says that, early one morning, he was "violently taken to the ground" by Officer Marks, who "forcefully slammed" him on his back and caused "permanent damage" to Ragan's left eye. *Id.* at 5. Ragan seeks $750,000 in compensatory and punitive damages. *See ibid.* After careful review, we find that Ragan has failed to state a valid claim for relief. So, we **DISMISS** the Amended Complaint *without prejudice* and *with* leave to amend.

### THE LAW

The Court "*shall* review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A (emphasis added). The definition of a "prisoner" includes "any person incarcerated or detained in any facility

---

[1] When Ragan filed his initial complaint, we noticed that he hadn't signed it under penalty of perjury. *See* Complaint [ECF No. 1]. "Before we [could] screen his allegations further," we ordered Ragan to file an amended complaint signed under penalty of perjury. Order [ECF No. 4] at 1. He promptly complied. *See* Am. Compl. [ECF No. 6] at 12.

who is . . . accused of [or] convicted of . . . violations of criminal law." *Id.* §1915A(c). In conducting its screening of a prisoner's complaint, the Court must "dismiss the complaint, or any portion of the complaint," when it is: (1) "frivolous, malicious, or fails to state a claim upon which relief may be granted"; or (2) "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b).

The Federal Rules of Civil Procedure require, in relevant part, that a well-pled complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "Every pleading . . . must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented." FED. R. CIV. P. 11(a). In this Court, a civil-rights complaint submitted by a *pro se* prisoner "must be signed under penalty of perjury." S.D. FLA. L.R. 88.2; *see also* FED. R. CIV. P. 11(a) ("*Unless a rule or statute specifically states otherwise*, a pleading need not be verified or accompanied by an affidavit." (emphasis added)). Additionally, "complaints must substantially follow the form, if any, prescribed by the Court." S.D. FLA. L.R. 88.2(a).

To state a claim upon which relief may be granted, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level"—with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Under this standard, legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotation marks omitted).

A court may dismiss a plaintiff's complaint for failure to comply with the Federal Rules, the Local Rules, or court orders. *See, e.g.*, *Brutus v. Int'l Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1240–41 (11th Cir. 2009) ("The court may dismiss a claim if the plaintiff fails to prosecute it or comply with a court order."); *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989)

("While dismissal is an extraordinary remedy, dismissal upon disregard of an order, especially where the litigant has been forewarned, generally is not an abuse of discretion."). And *pro se* litigants are not exempt from procedural rules. *See Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002) ("Despite construction leniency afforded *pro se* litigants, we nevertheless have required them to conform to procedural rules."); *see also Heard v. Nix*, 170 F. App'x 618, 619 (11th Cir. 2006) ("Although *pro se* complaints must be liberally construed, such complaints still must comply with the procedural rules governing the proper form of pleadings." (cleaned up)); S.D. FLA. L.R. 1.1 ("When used in these Local Rules, the word 'counsel' shall be construed to apply to a party if that party is proceeding pro se."). The Court may not assist a *pro se* plaintiff in constructing "a theory of liability from facts never alleged, alluded to, or mentioned" in the complaint. *Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011). Instead, "to prevail on a particular theory of liability, a party must present that argument to the district court." *Ibid.*; *see also GJR Inves., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998) ("Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as de facto counsel for a party."), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

## ANALYSIS

In the Amended Complaint, Ragan asserts only one excessive-force claim against Officer Marks. His allegations are brief. Ragan recounts that, on August 7, 2024, between 4:00 A.M. and 5:00 A.M., he was "[i]n the area of 1857 North Military Trail at Cross County Plaza." Am. Compl. at 4–5. He says that Marks "violently" and "forcefully slammed" him on his back, knocking him unconscious. *Id.* at 5. Ragan (ambiguously) mentions that "other officers [were] involved," but he's unsure whether they were present "at the time" of the incident. *Ibid.* Ragan was "taken to Good Samaritan Free Standing Emergency Room" with "a gash in the back of [his] head" and "permanent damage" to his left eye. *Ibid.* After careful review, we find that Ragan falls well short of stating a valid excessive-force claim against Marks.

"[W]hen an officer lawfully arrests an individual for the commission of a crime, no matter how minor the offense, the officer is entitled . . . to effectuate a full custodial arrest." *Horn v. Barron*, 720 F. App'x 557, 562–63 (11th Cir. 2018) (cleaned up). This right "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1986). The Eleventh Circuit has therefore "established the principle that the application of *de minimis* force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000). Rather, "[t]he Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of *excessive* force in the course of an arrest." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002) (emphasis added).

To determine whether an officer's use of force was "excessive," courts must analyze whether the officer's actions were "objectively reasonable in light of the facts and circumstances" confronting him, regardless of his "underlying intent or motivation." *Graham*, 490 U.S. at 397 (cleaned up). This inquiry "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Lee*, 284 F.3d at 1197 (quoting *Graham*, 490 U.S. at 396 (cleaned up)). To assess the "reasonableness" of an officer's use of force, we look to "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Crucially, this measure of "reasonableness" is objective—that is, we "must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time," and "not with the 20/20 vision of hindsight." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015); *see also Powell v. Snook*, 25 F.4th 912, 921 (11th Cir. 2022) ("We view the facts from the perspective of a reasonable officer on the scene with knowledge

4

of the attendant circumstances and facts, and we balance the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate." (cleaned up)).

We generally won't "second guess" an officer's choices "where the amount of force applied was not grossly disproportional to [the arrestee's] resistance[.]" *Flowers v. City of Melbourne*, 557 F. App'x 893, 895 (11th Cir. 2014) (cleaned up). But, when officers "continue to use substantial force against [an arrestee] who has clearly *stopped resisting*—whether because he has decided to become compliant, he has been subdued, or he is otherwise incapacitated—that use of force is excessive." *Williams v. Mallet*, 707 F. Supp. 3d 1340, 1355 (S.D. Fla. Dec. 19, 2023) (Altman, J.) (cleaned up); *see also Cendan v. Trujillo*, 779 F. App'x 688, 690 (11th Cir. 2019) (recognizing that "officers may not use excessive force against a non-resisting suspect who has already been subdued" (cleaned up)). So, the latitude a police officer enjoys in using force to effectuate a lawful arrest turns largely on timing. *Compare Horn*, 720 F. App'x at 564 ("[E]ven if the force applied by Officer Barron in effecting Horn's arrest—a soft hands, straight arm bar takedown technique, by which he gained control of her by taking hold of her left arm, putting his right arm over her left arm, and using gravity and his own weight to bring her to the ground—was unnecessary, it was not unlawful. Horn was *not restrained* at the time the force was applied by Officer Barron." (emphasis added)), *with Quinette v. Reed*, 805 F. App'x 696, 703 (11th Cir. 2020) ("Reed's application of a two-handed shove to a *non-resistant* detainee, with sufficient force to knock that detainee to the ground and to break his hip, constituted unreasonable force[.]" (emphasis added)).

The central problem with Ragan's Amended Complaint is that he gives us *no facts* by which we might determine whether Officer Marks's use of force was reasonable. For instance, Ragan says *nothing* about what (if anything) happened *before* Marks confronted him, whether Marks issued any verbal commands, or whether Ragan complied with those commands. *See generally* Am. Compl. We also know *nothing* about any underlying crime or arrest—nor has Ragan said whether he posed a threat to the safety of others. In other words, we have no idea what Marks "knew at the time," meaning we can't

5

assess his use of force "from the perspective of a reasonable officer on the scene" to determine whether Marks violated Ragan's Fourth Amendment rights. *Kingsley*, 576 U.S. at 397.

When Ragan drafts his second (and final) amended complaint, he *must* develop these facts *with specificity* to plausibly show that Marks's use of force was objectively unreasonable. Otherwise, we won't permit Ragan to proceed on his excessive-force claim. *See Barr v. Gee*, 437 F. App'x 865, 878 (11th Cir. 2011) (affirming the dismissal of an arrestee's "conclusory" excessive-force claim where he "did not describe the 'beating' or otherwise allege facts permitting a plausible inference that the force [ ] used was unreasonable" (cleaned up)); *McGowan v. Treasure Coast Forensic Treatment Ctr.*, 2023 WL 4295335, at *3 (S.D. Fla. June 30, 2023) (Martinez, J.) ("Plaintiff provides no details about the need for force and the amount of force used, the injuries he suffered, any efforts the officials made to temper their use of force, or his conduct which might have caused a security problem. Such bare and conclusory allegations are insufficient to state a claim for excessive force."); *Smith v. Slimak*, 2025 WL 326574, at *5 (S.D. Fla. Jan. 29, 2025) (Altonaga, C.J.) (dismissing the plaintiff's excessive-force claim where his "sparse allegations [left] the Court unable to evaluate whether a reasonable officer at the scene would have believed the level of force necessary in the situation"). We therefore **DISMISS** Ragan's Amended Complaint *without prejudice* for failure to state a claim upon which relief can be granted.

\*   \*   \*

Accordingly, we **ORDER AND ADJUDGE** as follows:

1. By **April 21, 2025**, the Plaintiff must file a second amended complaint correcting the deficiencies identified in this Order. The second amended complaint must be no longer than 20 double-spaced pages, must be signed under the penalty of perjury, and must contain a short and plain statement of the Plaintiff's claim for relief, a basis for federal jurisdiction, and a demand for judgment. The second amended complaint must also include a separate paragraph for each Defendant, explaining what that Defendant did wrong, and it must present all allegations in numbered paragraphs. The Clerk

is **ORDERED** to attach a copy of this Court's form titled "Complaint for Violation of Civil Rights (Prisoner)."

2. The second amended complaint must be labeled "Second Amended Complaint" and must show the case number referenced above, so that it will be filed in this case. The Court will only consider the claims raised in the second amended complaint, which will be the operative pleading for the rest of this case. The Plaintiff may not incorporate by reference past claims.

3. The Plaintiff's failure to file the second amended complaint on time and in compliance with this Order shall result in dismissal of this case for failure to prosecute or for failure to comply with court orders. *See* FED. R. CIV. P. 41(b).

4. This case shall remain administratively **CLOSED**.

**DONE AND ORDERED** in the Southern District of Florida on March 30, 2025.

                      **ROY K. ALTMAN**
                      **UNITED STATES DISTRICT JUDGE**

cc:    Ronald D. Ragan, *pro se*